ORIGINAL

EDWARD H. KUBO, JR.    #2499
United States Attorney
District of Hawaii

FLORENCE T. NAKAKUNI #2286
Chief, Narcotics Section

CHRIS A. THOMAS       #3514
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii   96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
E-mail:  Chris.Thomas@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

FEB 2 4 2006

at ____o'clock and ___min. ___M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 06-00094 JMS |
| | ) | CR. NO. 05-00206-01 JMS |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OF PLEA AGREEMENT; |
| | ) | Attachment "A" - Forfeiture |
| vs. | ) | Agreement |
| | ) | |
| AUDWIN AIWOHI, | ) | DATE:   February 24, 2006 |
| | ) | TIME:   1:30 p.m. |
| Defendant. | ) | JUDGE:  Honorable J. Michael |
| | ) |        Seabright |
| | ) | |

MEMORANDUM OF PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal

Procedure, the UNITED STATES OF AMERICA, by its attorney, the

United States Attorney for the District of Hawaii, and the

defendant, AUDWIN AIWOHI (hereinafter "Defendant"), and his

attorney, Reginald P. Minn, Esq., have agreed upon the following:

1.    Defendant acknowledges that he is charged in an Indictment with one (1) count of a violation of Title 21, United States Code, Section 846 (Count 1 - Conspiracy to possess with intent to distribute in excess of fifty (50) grams of methamphetamine); two counts of a violation Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A) (Counts 3 & 5 - Possession with intent to distribute in excess of fifty (50) grams of methamphetamine); and two counts of a violation of Title 21, United States Code, Section 843(b)(Counts 6 & 7 - unlawful use of a communications facility.

A.    Defendant also acknowledges that he is charged in an Information with a violation of Title 18, United States Code, Section 1956(h) (Count 1 - Conspiracy to commit money laundering); forfeiture pursuant to Title 18, United States Code §982(a)(1) (Count 2 - Criminal forfeiture of property based on Count 1 of the Information); and forfeiture pursuant to Title 21, United States Code, Section 853 (Count 3 - Criminal forfeiture of drug proceeds based on Count 1 of the Indictment).

B.    Defendant is aware that he has a right to have the felony charges contained in the Information asserted against him by way of Grand Jury Indictment.  Defendant hereby waives (gives up) this right and consents that this charge may be asserted against him by way of Information rather than Indictment.

2

2.    Defendant has read the charges against him contained in the Indictment and the Information, and the charges have been fully explained to him by his attorney.  In making his decision to plead guilty to Count 1 of the Indictment and Counts 1, 2 and 3 of the Information, Defendant has had ample opportunity to consult with his undersigned defense attorney, and Defendant is satisfied with the legal advice and representation of his defense attorney.

3.    Defendant fully understands the nature and elements of the crime with which he has been charged.

4.    Defendant will enter a voluntary plea of guilty to Count 1 of the Indictment and to the Counts that are contained in the Information.  The Government agrees to move to dismiss Counts 3, 5, 6 and 7 contained in the Indictment as to Defendant in this case, after the sentencing of Defendant.

5.    Defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

6.    Defendant enters these guilty pleas because he is in fact guilty of conspiracy to possess with intent to distribute in excess of 50 grams or more of methamphetamine; conspiracy to commit money laundering; and consents to the forfeitures of the three vehicles as alleged in Count 2, and the Cash as alleged in Count 3 of the Information.  Defendant further agrees that his

guilty pleas to the charges are voluntary and not the result of force or threats.

7.    Defendant understands that the penalties for the offenses to which he is pleading guilty are as follows:

A.    **As to Count 1 of the Indictment**:

(1)    A mandatory minimum term of imprisonment of ten years and up to life;

(2)    A fine of up to $4,000,000; and

(3)    A term of supervised release of not less than five years and up to life;

B.    **As to Count 1 of the Information**:

(1)    Up to 20 years imprisonment;

(2)    A fine of up to $500,000 or twice the value of the monetary or funds involved in the transportation, transmission or transfer whichever is greater; and

(3)    A term of supervised release of not less than 2 years and up to three years.

C.    **As to Count 2 of the Information**:

(1)    Forfeiture of the real property described below:

> (a)    All of the certain parcel of land located at 16-2095 41st Street, Keaau, Hawaii.  The parcel is further identified as the parcel corresponding to the Hawaii Tax Map Key number 3-1-6-074-069-0000, titled in the name of Lonesome Pine Ranch, Inc.;

(b)  All of the certain parcel of land located at 15-1855 19th Avenue, Keaau, Hawaii.  The parcel is further identified as the parcel corresponding to the Hawaii Tax Map Key number 3-1-5-023-174-0000, titled in the name of Lonesome Pine Ranch, Inc.;

(c)  All of the certain parcel of land located at 18-1248 Orchid Place, Keaau, Hawaii.  The parcel is further identified as the parcel corresponding to the Hawaii Tax Map Key number 3-1-8-064-051-0000, titled in the name of Lonesome Pine Ranch, Inc.; and

(d)  All of the certain parcel of land located at 16-2077 45th Street, Keaau, Hawaii.  The parcel is further identified as the parcel corresponding to the Hawaii Tax Map Key number 3-1-6-070-039-0000, titled in the name of Lonesome Pine Ranch, Inc.

(2)  Forfeiture of the three vehicles described below:

(a)  One white 2002 Toyota Tacoma bearing Hawaii License Plate Number 781TPY and Vehicle Identification Number 5TEHN72N52Z137606, registered in the name of Danette Aiwohi;

(b)  One 1990 International Stakebed bearing Hawaii License Plate Number 718HDD and Vehicle Identification Number 1HTSAZRM1LH694450, registered in the name of Lonesome Pine Ranch, Inc.; and

(c)  One blue 2004 Big Dog Custom Motorcycle bearing Hawaii License Plate Number 476XGN and Vehicle Identification Number 5J11GBJ114W000093, registered in the name of Danette Aiwohi.

D.   **As to Count 3 of the Information**:

(1)    Forfeiture of the $192,523 in U.S. currency (the "Cash") seized on May 12, 2005, from Defendant's property, located at 18-2458 N. Glenwood Road, Mountain View, Hawaii.

Defendant must also pay a $100 special assessment as to each count to which the Defendant is pleading guilty[1]. Defendant agrees to pay $100 for each count to which he is pleading guilty to the United States Attorney's Office, to be credited to said special assessments, before the commencement of any portion of sentencing.  Defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this agreement at its option.

8.  Defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charges to which defendant is pleading guilty:

A.    **As to Count 1 of the Indictment**:

(1)    Since in or around July 2002, the Defendant did enter into an agreement with his co-defendants Eric Castro, Kale Ornellas, Shawn Aguiar, aka "Rivers", and Randolph Aiwohi, aka "Randy," and others, to possess with intent to distribute and to distribute 50 grams or more of methamphetamine in Hawaii.

---

[1]    The $100 special assessment is mandatory pursuant to Title 18 U.S.C. § 3013(a)(2)(A).

(2)    In 2002, Kale Ornellas informed Defendant that he had a contact, Eric Castro, who was married to Ornellas' cousin.  Eric Castro was a resident of California.  Kale Ornellas informed the Defendant that Eric Castro would be able to supply methamphetamine to Defendant and Kale Ornellas.

(3)    In 2002, Eric Castro, Kale Ornellas, and Shawn Aguiar met in Ontario, California to discuss the price and the method of how the methamphetamine would be supplied and transported from California to Hawaii.

(4)    Pursuant to an agreement among Defendant, Kale Ornellas, and Shawn Aguiar, and starting in 2002, Defendant and Kale Ornellas coordinated the shipments and distribution of the methamphetamine that was supplied by Eric Castro.  Shawn Aguiar transported the methamphetamine from California to Hawaii, and Kale Ornellas and the Defendant distributed the methamphetamine that was brought to Hawaii.  In 2005, Defendant's brother, Randolph Aiwohi, became involved in the distribution of the methamphetamine in Hawaii.

(5)    Since 2002, the usual method used by this conspiracy involved: 1) money from Defendant, Kale Ornellas and Shawn Aguiar was pooled together and transported by Shawn Aguiar to Eric Castro in California; 2) Shawn Aguiar worked for his father's business - AMPAC (America Pacific Incorporated - International) which transported cattle from Hilo, Hawaii to

7

California on a bi-monthly basis. Shawn Aguiar smuggled the money aboard the cattle containers from Hawaii to California; 3) upon arrival in California, Shawn Aguiar met with Eric Castro in Ontario, California and gave the money to Eric Castro in exchange for which Eric Castro accepted the money and gave the methamphetamine to Shawn Aguiar; 4) Shawn Aguiar smuggled the methamphetamine by placing it into a duffel bag and concealed the duffel bag in a feed trough of the empty cattle container destined for its return trip from California to Hawaii; 5) upon arrival in Hawaii, Shawn Aguiar removed the methamphetamine from the cattle container and delivered the methamphetamine to Defendant and Kale Ornellas who distributed the methamphetamine; and 6) proceeds from the sale of the methamphetamine were used, in part, to order more methamphetamine and the cycle was thereafter repeated.

(6)    Between July 2002 and May 2005, utilizing the method described above, the Defendant, Kale Ornellas, and Shawn Aguiar, purchased more than 75 pounds of methamphetamine from Castro, which was transported from California to Hawaii for further distribution. In or around 2005, Randolph Aiwohi also became involved and he assisted in the distribution of methamphetamine in Hawaii.

The methamphetamine obtained from Castro was purchased at a price which ranged between $13,000 and $19,000 per pound.

(7)  In addition to transporting methamphetamine through the use of cattle containers, Defendant and his co-conspirators also used other methods.  In or around March of 2005, Eric CASTRO shipped from California to Hawaii approximately 8½ pounds of methamphetamine concealed in the engine manifold and engine casing of a 1994 Jeep Cherokee automobile registered to Eric Castro.  Eric Castro flew to Hilo, Hawaii, claimed the vehicle, obtained the methamphetamine from the engine manifold and distributed it to Kale Ornellas.  The methamphetamine was taken to Defendant's residence where it was weighed out in smaller amounts for distribution.  Castro was paid a total of $30,000 at this time.

(8)  On May 12, 2005, Agents and Officers executed a search warrant for the residence of Defendant located at 18-2458 N. Glenwood Road, Mountain View, Hawaii.  As a result of the search warrant, Agents and Officers seized approximately seven and one-half pounds of methamphetamine that was concealed in various areas of the property.  Additionally, Agents and Officers seized approximately $192,523 in U.S. currency.  Defendant admits that the $192,523 in U.S. currency constitutes drug proceeds

obtained by Defendant as a result of his involvement in the conspiracy charged in Count 1 of the Indictment.

(9) The above described methamphetamine that was seized from the property owned by Defendant was analyzed by the Drug Enforcement Administration Laboratory which resulted in a positive finding for d-methamphetamine HCl in the amount of 3364.8 grams with a purity of 98%.

B.   **As to Counts 1, 2, & 3 of the Information**:

(1) In addition, during the time period from on or about July 2002, to and including May 12, 2005, Defendant did enter into an agreement with his co-conspirators Eric Castro, Kale Ornellas, Shawn Aguiar, and others, to conduct various financial transactions that involved proceeds from the illegal sale of methamphetamine with the intent to promote the carrying on of said specified unlawful activity.

(2) During the conspiracy period, Defendant and his co-conspirators shipped from Hawaii to California various amounts of U.S. currency that was derived from or constituted proceeds from the illegal sale of methamphetamine. The U.S. currency was given to Eric Castro in exchange for methamphetamine and was accomplished in order to promote the illegal sale of methamphetamine, by serving as either payment for the previous shipment of methamphetamine or to purchase additional amounts of methamphetamine.

(3)   In addition, during the time period from on or about July 2002, up to and including May 12, 2005, Defendant did use the proceeds of methamphetamine sales to pay for improvements to real property owned by Lonesome Pine Ranch, Inc. This real property was subsequently sold and the profit from this sale was used by Lonesome Pine Ranch, Inc., to purchase and improve other real estate.  Lonesome Pine Ranch, Inc., is now the owner of the following parcels which are tainted by Defendant's use of proceeds of methamphetamine sales to pay for improvements to the real property, or by their having been purchased by Lonesome Pine Ranch, Inc., with profits from similarly tainted real property:

    (a)   That certain parcel of land located at 16-2095 41st Street, Keaau, Hawaii.  The parcel is further identified as the parcel corresponding to the Hawaii Tax Map Key number 3-1-6-074-069-0000, titled in the name of Lonesome Pine Ranch, Inc.;

    (b)   That certain parcel of land located at 15-1855 19th Avenue, Keaau, Hawaii.  The parcel is further identified as the parcel corresponding to the Hawaii Tax Map Key number 3-1-5-023-174-0000, titled in the name of Lonesome Pine Ranch, Inc.;

    (c)   That certain parcel of land located at 18-1248 Orchid Place, Keaau, Hawaii. The parcel is further identified as the parcel corresponding to the Hawaii Tax Map Key number 3-1-8-064-051-0000, titled in the name of Lonesome Pine Ranch, Inc.; and

>(d)    That certain parcel of land located at 16-2077 45th Street, Keaau, Hawaii. The parcel is further identified as the parcel corresponding to the Hawaii Tax Map Key number 3-1-6-070-039-0000, titled in the name of Lonesome Pine Ranch, Inc.

(4)    In addition, during the time period from July 2002, up to and including May 12, 2005, the Lonesome Pine Ranch, Inc., was involved in the purchase of the following vehicles using funds which were tainted by Defendant's use of the proceeds of methamphetamine sales:

>(a)    One white 2002 Toyota Tacoma bearing Hawaii License Plate Number 781TPY and Vehicle Identification Number 5TEHN72N52Z137606, registered in the name of Danette Aiwohi;

>(b)    One 1990 International Stakebed bearing Hawaii License Plate Number 718HDD and Vehicle Identification Number 1HTSAZRM1LH694450, registered in the name of Lonesome Pine Ranch, Inc.; and

>(c)    One Blue 2004 Big Dog Custom Motorcycle bearing Hawaii License Plate Number 476XGN and Vehicle Identification Number 5J11GBJ114W000093, registered in the name of Danette Aiwohi.

(5)    Defendant admits that all of the real property listed in Paragraph 8(b)(3), above, and all of the vehicles listed in paragraph 8(b)(4) above, are subject to forfeiture pursuant to 18 U.S.C. Section 982(a)(1), as properties, real or personal, involved in the money laundering

offense alleged in Count 1 of the Information, or as property traceable to such property.

(6) Defendant admits that the $192,523 in U.S. currency seized on May 12, 2005, from Defendant's residence is subject to forfeiture pursuant to 21 U.S.C. Section 853(a)(1), as property constituting, or derived from, illegal drug proceeds that Defendant obtained as a result of the offense charged in Count 1 of the Indictment. Defendant agrees to the forfeitures of the Three Vehicles as charged in Count 2 of the Information, and the Cash as charged in Count 3 of the Information and the Settlement Payment as provided for in the attached Forfeiture Agreement.

9. Pursuant to CrimLR32.1 of the Rules of the United States District Court for the District of Hawaii, the parties agree that the charge to which the defendant is pleading guilty adequately reflects the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

10. Pursuant to CrimLR32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of Defendant in connection with this matter:

A.  Defendant admits that the factual representations as stated in paragraph 8 of this Memorandum of Plea Agreement are true and correct.

B.  Based upon information presently known to the prosecution, as of the date of the execution of this Agreement, the United States will not argue at the time of sentencing of the Defendant that Defendant was an organizer, leader, manager or supervisor of others in the offense, as determined in the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. Section 848.

11.  Defendant agrees to forfeit to the United States his interest in the properties described in the Forfeiture Agreement as provided by the terms of that Agreement.  The Forfeiture Agreement is attached hereto as Exhibit "A" and incorporated herein by reference.

12.  Except as set out in the Forfeiture Agreement, Defendant represents and warrants to the government that he has no interest, either direct or indirect, whether held in his own name, or in the name of another person or entity, in any other property, real or personal, or in any other asset that would be subject to forfeiture on the basis of violations covered by this Agreement.  Defendant understands and acknowledges that the government is relying upon Defendant's representations in entering into this Agreement.

14

13.  Further, Defendant agrees that the forfeiture of any properties pursuant to or identified in the Forfeiture Agreement shall not be treated as satisfaction of any fine, restitution, reimbursement of cost and imprisonment, or any other monetary penalty this Court may impose upon Defendant in addition to the forfeiture.

14.  The Defendant is aware that he has the right to appeal the sentence imposed under Title 18, United States Code, Section 3742(a).  However, in exchange for the concessions made by the prosecution in this agreement, Defendant knowingly and voluntarily waives the right to appeal, any sentence imposed by the Court, including any order of restitution, and the manner in which that sentence was determined.  The only exceptions to this complete waiver are that Defendant retains the right to appeal: (1) any sentences that exceeds the maximum punishment permitted under law; (2) the upward departure portion of his sentence if the Court, in imposing sentence, departs (as that term is used in Part K of the Sentencing Guidelines) upward from the guideline range determined by the Court to be applicable to the Defendant.

A.  The Defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, subject

only to the exception that the Defendant may make such a
challenge based on a claim of ineffective assistance of counsel.

      B.   The prosecution retains its right to appeal the
sentence and the manner in which it was determined on any of the
grounds stated in Title 18, United States Code, Section 3742(b).

     15.  The Defendant understands that the District Court in
imposing sentence will not be bound by the provisions of the
Sentencing Guidelines and that the Sentencing Guidelines are
advisory.  Subject to the exceptions noted in the previous
paragraph, the Defendant is surrendering his right to challenge
any sentence within the statutory maximum, or the manner in which
it was determined, including, but not limited to, a sentence that
the Defendant perceives to be an incorrect application of the
Guidelines.  The Defendant further agrees that there is no
promise or guarantee of the applicability or non-applicability of
any Guideline or any portion thereof, notwithstanding any
representations or predictions from any source.

     16.  The Defendant understands that pursuant to Guideline
6B1.1(c), this Agreement cannot be accepted or rejected by the
Court until there has been an opportunity by the Court to
consider a Presentence Report, unless the Court decides that a
Presentence Report is unnecessary pursuant to Guideline 6A1.1.
The Defendant understands that the Court will not accept an
agreement unless the Court determines that the charges contained

16

in the Indictment and the Information adequately reflects the seriousness of the actual offense behavior and accepting the agreement will not undermine the statutory purposes of sentencing.

17.    Defendant understands that by pleading guilty he surrenders certain rights, including the following:

A.    If Defendant persisted in a plea of not guilty to the charges against him, he would have the right to a public and speedy trial.  The trial could be either a jury trial or a trial by a judge sitting without a jury.  The Defendant has a right to a jury trial.  However, in order that the trial be conducted by the judge sitting without a jury, the Defendant, the prosecution, and the judge all must agree that the trial be conducted by the judge without a jury;

B.    If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random.  Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges.  The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that the Defendant is presumed innocent, and that it could not convict him unless, after hearing

17

all the evidence, it was persuaded of his guilt beyond a reasonable doubt;

     C.  If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the Defendant's guilt beyond a reasonable doubt;

     D.  At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the Defendant.  Defendant would be able to confront those prosecution witnesses and his attorney would be able to cross-examine them.  In turn, Defendant could present witnesses and other evidence on his own behalf.  If the witnesses for the Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court; and

     E.  At a trial, the Defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.

     F.  The Defendant understands that he has a right to a jury determination, beyond a reasonable doubt, of the drug type and quantity as alleged in the indictment and that by pleading guilty he is giving up that right.

    18.  Defendant understands that by pleading guilty, he is waiving all of the rights set forth in the preceding paragraph.

Defendant's attorney has explained those rights to him and the consequences of the waiver of those rights.

19. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreement reached, other than those set forth in this Agreement, to induce Defendant to plead guilty.

20. Should the Court refuse to accept this Agreement, it is null and void and neither party shall be bound thereto. The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to accept this Agreement since the Court is expressly not bound by stipulations between the parties.

21. Defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of Defendant's conduct regarding the charge against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

22. The Defendant agrees that he will fully cooperate with the United States.

A. He agrees to testify truthfully at any and all trials, hearings, or any other proceedings at which the prosecution requests him to testify, including, but not limited to, any grand jury proceedings, trial proceedings involving co-

Defendants and others indicted later in the investigation, and related civil proceedings;

      B.  Defendant agrees to be available to speak with law enforcement officials and to representatives of the United States Attorney's Office at any time and to give truthful and complete answers at such meetings, but he understands he may have his counsel present at those conversations, if he so desires;

      C.  Defendant agrees he will not assert any privilege to refuse to testify at any grand jury, trial, or other proceeding, involving or related to the crime in the Information or any subsequent charges related to this investigation at which the prosecution requests him to testify;

      D.  Should any criminal prosecution be brought against Defendant by the U.S. Attorney's Office, the prosecution will not offer in evidence in its case-in-chief, or in connection with any sentencing proceeding for the purpose of determining an appropriate sentence, any statements made by Defendant at any and all debriefing meetings related to this case, except in a prosecution for false statements, obstruction of justice, or perjury;

      E.  Notwithstanding paragraph 20(d) above, the prosecution may use (I) information derived directly or indirectly from any and all debriefing meetings for the purpose of obtaining and pursuing leads to other evidence, which evidence

may be used in any prosecution of Defendant by the prosecution, and (ii) statements made by Defendant at any and all debriefing meetings and all evidence obtained directly or indirectly from those statements for the purpose of cross-examination should Defendant testify, or to rebut any evidence offered by or on behalf of Defendant in connection with the trial and/or at sentencing, should any prosecution of Defendant be undertaken; and

     F.   Pursuant to Section 1B1.8(a) of the Sentencing Guidelines, the prosecution agrees that self-incriminating information provided pursuant to this Agreement to cooperate will not be used in determining the applicable guideline range, except as may be provided in this Agreement and under Section 1B1.8(b) of the Sentencing Guidelines.

    23.   In the event that the Defendant does not breach any of the terms this Agreement but the Court nonetheless refuses to accept the Agreement after Defendant has made statements to law enforcement authorities or representatives of the United States Attorney's Office pursuant to this Agreement, the prosecution agrees not to use said statements in its case-in-chief in the trial of the Defendant in this matter.  Defendant understands that this does not bar the use of information and evidence derived from said statements or prohibit the use of the statements by the prosecution in cross-examination or rebuttal.

24.   Pursuant to Guideline Section 5K1.1 and Rule 35(b),
Federal Rules of Criminal Procedure, the prosecution may move the
Court to depart from the Guidelines on the ground that the
Defendant has provided substantial assistance to authorities in
the investigation or prosecution of another person who has
committed an offense.   Pursuant to Title 18, United States Code,
Section 3553(e), the prosecution may also move the Court to
impose a sentence below the level established by statute as a
minimum sentence for the Information on the ground that Defendant
has provided substantial assistance in the investigation or
prosecution of another person who has committed an offense.
Defendant understands that:

A.   The decision as to whether to make such a request
or motion is entirely up to the prosecution.

B.   This Agreement does not require the prosecution to
make such a request or motion.

C.   This Agreement confers neither any right upon the
Defendant to have the prosecution make such a request or motion,
nor any remedy to Defendant in the event the prosecution fails to
make such a request or motion.

D.   Even in the event that the prosecution makes such a
request or motion, the Court may refuse to depart from the
Guidelines or to impose a sentence below the minimum level
established by statute.

22

DATED:  Honolulu, Hawaii, _____2/22/06_____.

AGREED:


EDWARD H. KUBO, JR.                      AUDWIN AIWOHI
United States Attorney                   Defendant
District of Hawaii



FLORENCE T. NAKAKUNI                      REGINALD P. MINN
Chief, Narcotics Section                 Attorney for Defendant



CHRIS A. THOMAS
Assistant U.S. Attorney



USA v. Audwin Aiwohi, et al.
Memo of Plea Agreement
Cr. No. 0600094 JMS
Cr. No. 05-00206-01 JMS